UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANZE ENTERPRISES, INC., d/b/a BAJA AUTO INSURANCE,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN CASUALTY COMPANY OF READING, PA,<br><br>Defendant. | No. 2:14-cv-02623-KJM-AC<br><br><br><br>ORDER |

American Casualty Company of Reading, PA (ACCO or defendant) has moved to transfer this case to the Northern District of Texas. (Def.'s Mem. P.&A. Supp. Mot. Transfer at 1, ECF No. 14.) The court heard arguments on the matter on January 30, 2015. David Gauntlett appeared for Shanze Enterprises, Inc. (Shanze or plaintiff), and Robert Christensen appeared for ACCO. After considering the parties' briefing and arguments at the hearing, the court GRANTS the motion.

I.   BACKGROUND

   A.   Procedural Background

Shanze, a Texas Corporation with its principal place of business in Dallas, Texas, does business as Baja Auto Insurance. (Compl. ¶ 1, ECF No. 1.) ACCO is a Pennsylvania

1

corporation with its principal place of business in Reading, Pennsylvania.  (*Id.* ¶ 2.)  In October 2014, Baja Insurance Services, Inc. filed a complaint in this district and alleged trademark infringement claims against Shanze.  (*Id.* ¶¶ 9–10; *id.* Ex. 2; *see also Baja Ins. Servs. Inc. v. Shanze Enters., Inc. dba Baja Auto Ins.*, No. 14-2423 (E.D. Cal. filed Oct. 15, 2014)).  For convenience, the court refers to this action as the "*Baja* action."  Shanze then sent a letter requesting representation to ACCO, from whom it had purchased a series of commercial general liability policies. (Compl. ¶ 7, giving notice of the *Baja* action, *id.* ¶ 11.)  On October 29, 2014, ACCO returned the correspondence and advised Shanze it would not provide coverage against the allegations in the *Baja* action.  (*Id.* ¶ 12; *id.* Ex. 3.)  Shanze sought reconsideration from ACCO on November 3, 2014 (*id.* ¶ 14; *id.* Ex. 4), but ACCO did not agree to provide the coverage Shanze requested (*id.* ¶ 15).

A few days later, Shanze filed the complaint in this case against ACCO, seeking declaratory judgment that ACCO must defend it in the *Baja* action, and seeking damages, costs, and other relief.  (*Id.* at 14–15.)  Before ACCO appeared or filed a responsive pleading, Shanze filed a notice of related cases, alerting the court to the *Baja* action.  (Not. Rel. Case, ECF No. 4.)  The court related the *Baja* action to this case on November 18, 2014, finding reassignment to the undersigned would effect substantial savings of judicial effort and serve the convenience of the parties.  (Order 1–2, ECF No. 5.)  ACCO answered the complaint on December 5, 2014.  (ECF No. 10.)  On December 12, 2014, Shanze moved for partial summary judgment (ECF No. 12), and ACCO moved to transfer the case to the Northern District of Texas (ECF No. 13).  On December 30, 2014, at the same time it opposed Shanze's motion for partial summary judgment (ECF No. 24), ACCO also moved for partial summary judgment in its favor (ECF No. 25). Because the court grants the motion to transfer, it does not reach the parties' summary judgment motions.

B.      Factual Background

This action concerns interpretation of the parties' commercial liability policy agreement.  (*See generally* Compl.)  Shanze alleges venue is appropriate in this district because the *Baja* action will be litigated here, because ACCO sells insurance in California and defends

2

lawsuits in this district, and because this district "is the place of performance under the Policy and California law governs ACCO's obligations to Baja." (*Id.* ¶¶ 4–6.) Shanze does not allege it does business in California, and its motion papers identify no connection to this district other than the *Baja* action. ACCO has submitted the declaration of Stephen Kuntz, the underwriting director responsible for the policy in question. (Kuntz Decl. ¶¶ 1–4, ECF No. 16.) Kuntz's declaration attaches copies of several forms contained in the ACCO policies issued annually to Shanze since February 2009. Each shows ACCO provided coverage through its agent, Legacy Insurance Partners, in Carrollton, Texas, and each policy shows it was issued by ACCO's Dallas Branch. (*See, e.g.*, *id.* at 1.) The forms include "Schedules of Locations and Coverage" listing several locations in Texas (*see, e.g.*, *id.* at 3–16), and "Additional Interest Schedules" listing entities located in Texas to be notified of any change in a policy (*see, e.g.*, *id.* at 17–21). The forms include endorsements modifying the policy in ways specific to Texas (*see, e.g.*, *id.* at 22–25), and describe "Important Information for Texas Policyholders" (*see, e.g.*, *id.* at 26–27). Each of the above facts is also true of the policy Shanze attached to its complaint.[1] Shanze does not dispute these characterizations. It notes only that the business owners liability coverage form applies to "'personal and advertising injury' caused by an offense arising out of your business . . . committed in the 'coverage territory' during the policy period," and that the policy defines "coverage territory" to include the United States, Puerto Rico, Canada, and in some cases, "International waters or airspace," or even "[a]ll other parts of the world." (Compl. Ex. 1, at 132, ECF No. 1-1.) Neither party has drawn the court's attention to any insurance policy or form that mentions California specifically.

/////

/////

---

[1] *See* Compl. Ex. 1, at 1, ECF No. 1-1 (policy issued by ACCO's agent, Legacy Insurance Partners, in The Colony, Texas and its branch in Dallas); *id.* Ex. 1, at 3–18 (listing in the "Schedule of Locations and Coverage" only locations in Texas); *id.* Ex. 1, at 19–21 (an "Additional Interest Schedule" describing locations in Texas); *id.* Ex. 1 at 103–105 (describing Texas-specific changes); *id.* Ex. 1, at 136 (an endorsement modifying the businessowners liability coverage, designating locations in only Texas); *id.* Ex. 1, at 160, 162, 163, 168 (describing "Important Information for Texas Policyholders").

I.  LEGAL STANDARD

A district court may transfer a case to another district in which the action could have been brought "[f]or the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). Unlike 28 U.S.C. § 1406(a) and Rule 12(b)(3), which apply when the original venue is "wrong" or "improper," *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, __ U.S. __, 134 S. Ct. 568, 579 (2013), section 1404(a) grants district courts discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). To make this "individualized, case-by-case consideration," the Ninth Circuit has suggested a non-exclusive list of wide-ranging public and private factors for courts to consider. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). ("For example, the court may consider (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, . . . (8) the ease of access to sources of proof[,]" (9) "the presence of a forum selection clause[,] if any," and (10) "the relevant public policy of the forum state[.]" *Id.*. The party seeking transfer bears the burden to make a "strong showing" these factors weigh in its favor. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

II.  DISCUSSION

At the outset, the court notes the very similar nature of this suit to another recent case in the Central District of California. *See Global Décor, Inc. v. Cincinnati Ins. Co.*, No. 11-2602, 2011 WL 2437236, at *2 (C.D. Cal. June 16, 2011). In *Global Decor*, the plaintiff was sued in California, and its out-of-state commercial liability insurer denied coverage for the suit under an agreement negotiated and executed in the Northern District of Illinois. *Id.* at *1. The plaintiff then sought to compel its insurer to provide coverage, and the defendant insurer

4

moved to transfer the case to the District of Illinois. *Id.* The Central District court granted the motion to transfer, rejecting each argument the plaintiff in this action makes before this court. *Id.* ACCO cited *Global Décor* in its motion, but Shanze did not address it. At the hearing, Shanze argued *Global Décor* was distinguishable. The court finds *Global Décor* persuasive, while conducting its own independent analysis of each factor prescribed by the Ninth Circuit.

### 1. Whether Case Could Have Been Brought in Texas

The first determination this court must make is whether Shanze could have brought this action in the Northern District of Texas. ACCO maintains a local branch in Dallas and placed the policies in question with Shanze through an agent in Dallas, so personal jurisdiction would have proved no barrier. Federal subject matter jurisdiction is based on diversity jurisdiction, 28 U.S.C. § 1332, and the parties would remain diverse in the Northern District of Texas. The general venue provisions of 28 U.S.C. § 1391(b) apply: "A civil action may be brought in . . . a judicial district where any defendant resides, if all defendants reside in the same [s]tate . . . ." 28 U.S.C. § 1391(b). For purposes of that section, a corporate defendant resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). ACCO, the only defendant here, maintains a branch in Dallas and resides in the Northern District of Texas for purposes of section 1391, and the case could have been brought in that district. The parties do not dispute this conclusion.

The court next considers the factors enumerated in *Jones*. *See* 211 F.3d at 498–99.

### 2. Location of Negotiation and Execution

The insurance agreement was negotiated and executed in Texas between Shanze, a Texas corporation with its principal place of business in Dallas, and ACCO's agent in Texas. (ECF No. 16, Exs. A–F.) ACCO issued the policy from its local Dallas branch. (*Id.*) California was not mentioned in the negotiations or agreement. By arguing this factor does not apply because "the negotiation and execution of the insurance policies is not in dispute and is irrelevant to the duty to defend" (ECF No. 23 at 5), Shanze discounts the *Jones* court's conclusion that the

/////

location of negotiation and execution of a disputed contract is relevant to a motion to transfer, 211 F.3d at 498–99. This factor weighs in favor of transfer.

### 3. Applicable State Law

If another federal district court is at "home with the law" governing a diversity action, this fact weighs in favor of transfer. *Kuhnhausen v. Dwyer*, No. 06-1062, 2006 WL 2666076, at *2 (E.D. Cal. Sept. 15, 2006) (quotation, citation omitted). To determine which law applies to a diversity action, federal district courts apply the choice of law rules of the state in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). California courts have used both decisional and statutory choice of law rules. *Compare, e.g.*, *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08 (2006) (describing a common-law "governmental interest" test) *with, e.g.*, *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1459–61 (2007) (applying Cal. Civ. Code § 1646). The "governmental interest" test includes three steps:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state" and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied."

*Kearney*, 39 Cal. 4th at 107–08 (quoting *Bernhard v. Harrahs Club*, 16 Cal. 3d 313, 320 (2002), *overruled by statute on other grounds*, Cal. Civ. Code § 1714 (2002)). The statutory approach is simpler and more direct: when interpreting a contract, a court first looks "to the law and usage of the place where [the contract] is to be performed," but if the contract "does not indicate a place of performance," the contract is interpreted "according to the law and usage of the place where it [was] made." Cal. Civ. Code § 1646;[2] *Frontier*, 153 Cal. App. 4th at 1449.

---

[2] In full, California Civil Code section 1646 provides: "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646.

In *Frontier*, the California Court of Appeal thoroughly reviewed the history of both the governmental interests test and section 1646, and concluded that the California Supreme Court had not abrogated the statute, which by its own terms governs the interpretation of contracts. *See Frontier*, 153 Cal. App. 4th at 1454–61 ("The California Supreme Court has never applied the governmental interest analysis to determine the law governing the interpretation of a contract and has never stated or suggested that section 1646 does not determine the law governing the interpretation of a contract."). This court agrees that the California Supreme Court would apply Civil Code § 1646, rather than the general governmental interests test, in the circumstances of this case. The statute's more specific provisions and status as legislative enactment support its applicability in cases of contract interpretation. And by requiring the court to determine whether a contract "indicate[s] a place of performance," Cal. Civ. Code § 1646, the statute bolsters "the fundamental goal of contract interpretation" under California law: "to give effect to the mutual intent of the parties as it existed at the time of contracting." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014–15 (9th Cir. 2012) (citations and internal quotation marks omitted).

California decisions provide "little guidance" on interpretation of the statute's phrase "indicate a place of performance." *Frontier*, 153 Cal. App. 4th at 1448. The *Frontier* court held that a contract "indicate[s] a place of performance within the meaning of section 1646 if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances." *Id.* at 1450 (alteration in original). This court perceives no shortcoming in that definition.

As an initial matter, the court notes no express choice of law provision is at play in this case. *See Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 645 (1993) ("[W]here the parties have made a choice of law, their choice is usually enforced."). Consequently, applying the California choice-of-law rule to the contract at issue in this case, it points to Texas law, regardless of whether the parties' agreement contemplates performance in a specific location. First, assuming the agreement applies all over the world, as Shanze suggests, then it would functionally apply in no specific location or jurisdiction, and section 1646 would require application of the law "of the place where it [was] made." Cal. Civ. Code § 1646. The

parties negotiated and executed their agreement in Texas, thus Texas law applies. Shanze's alternative argument is unconvincing: if the contract contemplates performance "everywhere," then the default rule would allow a party seeking contractual remedies to select any law it likes, rendering section 1646 meaningless. *Cf. Global Décor*, 2011 WL 2437236, at *3 (rejecting the same argument). Second, if the court assumes, on the other hand, that the contract must indicate performance in a specific location, then Texas is the only possible location, and Texas law applies. No other state plays so central a role in the contract's terms. Because Texas law applies to the interpretation of the parties' agreement, this factor weighs in favor of transfer.

                4.      Choice of Forum

Normally, a court accords a plaintiff's choice of forum "great weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). This is a general rule and does not apply when, for example, the plaintiff sues on behalf of a class or corporate shareholders, *id.*, when the plaintiff does not reside in the chosen forum, *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 47 F. Supp. 2d 1183, 1191 (S.D. Cal. 2007), or when "the action has little connection to the chosen forum," *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157 (S.D. Cal. 2005) (collecting cases). In the instant case, only one fact connects this dispute to the Eastern District of California: the *Baja* action. Shanze does not reside in this district, the contract at issue does not mention this district or specifically contemplate action in this district, and the parties apparently agree the operative facts and evidence have little connection to this district. (*See* ECF No. 14 at 5 ("From ACCO's perspective, the coverage dispute between Shanze and ACCO raises legal issues. However, Shanze makes allegations regarding Shanze's activities, all of which would have occurred in Texas."); ECF No. 23 at 4 (describing this case as "a declaratory relief action that requires no discovery, requires no trial, raises only legal issues, and is ready for prompt determination as a matter of law"); *id.* at 7 ("The only proof this Court need consider is: (1) the ACCO insurance policies; (2) the complaint in the underlying Baja Action; (3) correspondence between counsel for ACCO and Baja regarding coverage; and (4) the extrinsic evidence of the parties' websites that is already before this Court, attached to Declarations that support the Motion for Partial Summary

/////

Judgment presently set for concurrent hearing with this Motion on January 16, 2015.").)  This factor favors retention, although only slightly.

### 5. The Parties' Contacts with California and Texas

As described above, except for the *Baja* action, neither party has any contact with California or contemplated any contacts with California at the time each negotiated and signed the agreement at issue.  This factor weighs in favor of transfer.

### 6. The Parties' Contacts Related to Shanze's Claim in California

"An underlying breach of contract dispute filed in [this district] . . . does not necessarily provide this Court with an interest in resolving a separate duty to defend suit involving interpretation of a contract governed by [out-of-state] law and negotiated by parties located in [other states]."  *Global Decor*, 2011 WL 2437236, at *4.  While litigation in this district is relevant to whether venue is proper in this district, it does not automatically determine a motion to transfer, which implicitly assumes venue is proper in both the original and target districts.  *See* 28 U.S.C. § 1404(a) ("a district court may transfer any civil action to any other district or division where it might have been brought"); *Atl. Marine*, 134 S. Ct. at 579 ("[Section 1404(a)] permits transfer to any district where venue is also proper . . . .").  The purpose of the factors described in *Jones* is to weigh the relative advantages of two forums in the context of the parties' dispute.  *See* 211 F.3d at 498.  Despite the venue of the *Baja* action, the dispute between Shanze and ACCO surrounds their agreement, their intent, and the determination of their respective rights and obligations.  The parties' contacts with one another relevant to their contract dispute weigh in favor of litigation in Texas.

### 7. Costs of Litigation

To the extent witness testimony will be taken and documentary evidence produced, this factor favors transfer.  The likely witnesses are in Texas, where Shanze is incorporated and does its business, and where ACCO maintains an insurance agent and local office.  (ECF No. 14 at 7.)  ACCO correctly notes that the complaint places extrinsic evidence at issue, and that discovery likely will seek information or testimony of deponents located in Texas.  This conclusion holds in the face of Shanze's contention that ACCO, Janus-like, argues

9

simultaneously for the application of Texas law (which the parties agree disfavors extrinsic evidence) and that relevant extrinsic evidence is located in Texas. (*See id.*) Shanze itself contends extrinsic evidence is admissible, attaches that evidence to its complaint, and does not deny explanatory testimony or additional similar evidence may be discoverable. (*See id.*) Nor may Shanze rely on the fact that both parties have counsel in California. *Ready Transp., Inc. v. AAR Mfg., Inc.*, No. 06-1053, 2006 WL 2131308, at *5 (E.D. Cal. July 27, 2006) ("The convenience of counsel is irrelevant when determining whether to transfer an action under section 1404(a)." (Citations omitted.) This factor favors transfer.

### 8. Compulsory Process

This factor is not relevant because neither party seeks to compel the testimony of non-party witnesses or production from third parties. (*See* ECF No. 14 at 6 n.3; ECF No. 24 at 11–12); *Global Decor*, 2011 WL 2437236, at *5 (holding similarly).

### 9. Sources of Proof

This factor favors neither forum strongly, *see Cohen v. State Farm & Cas. Co.*, No. 09-1051, 2009 WL 2500729, at *6 (E.D. Cal. Aug. 14, 2009) ("[T]echnological advances (i.e. electronic filing, video and tele-conferencing, express mail services, faxes, etc.) have substantially reduced the burden of having to litigate in a distant forum."), but nonetheless weighs slightly in favor of transfer for the reasons discussed above, under litigation costs. *Foster v. Nationwide Mut. Ins. Co.*, No. 07-04928, 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007). This factor favors transfer, although only slightly.

### 10. Forum Selection Clause

No forum selection clause applies to the parties' agreement. (*See* ECF No. 14 at 6 n.3.) This factor favors neither forum.

### 11. Relevant Public Policy

California has little policy interest in this action between two Texas residents who dispute the interpretation of a contract governed by Texas law. (*See also* ECF No. 24 at 12 ("Texas . . . has a public policy interest evidenced by its Insurance Code . . . which requires that Texas law applies to all policies issued to Texas residents. . . . [T]hat policy applies only to suits

brought in Texas or suits applying Texas law." (citing Tex. Ins. Code Art. 21.42)).) This factor favors transfer.

### 12. Relative Docket Congestion

Although the parties do not raise the factor of relative docket congestion, "[a] court may also consider the relative docket congestion and time to trial between the transferee and transferor districts." *Cook v. Hartford*, No. 12-0019, 2012 WL 2921198, at *1 (E.D. Cal. July 17, 2012). On its own motion, the court takes judicial notice of publicly available Federal Court Management Statistics published by the Administrative Office of the Courts. *See Balanced Body Univ., LLC v. Zahourek Sys., Inc.*, No. 13-1606, 2014 WL 744105, at *4 (E.D. Cal. Feb. 24, 2014) (taking judicial notice of judicial caseloads). These reports show that in civil cases, as of September 30, 2014 in the Northern District of Texas, median time from filing to trial was 23.8 months, and from filing to disposition, 6.8 months. These same values are 42.4 months and 8.2 months for the Eastern District of California. While the Eastern District ranks exceptionally high in productivity measures, these data on balance weigh in favor of transfer, especially here, where the *Baja* action will continue while Shanze seeks coverage for its defense costs. Accordingly, this factor favors transfer.

### 13. The Effect of the Related Case Order

The Supreme Court has advised that transfer under 28 U.S.C. § 1404(a) is meant to avoid "a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts" because simultaneous litigation of the same issues leads to wastes of "time, energy, and money." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). Related litigation in a transferee court therefore often favors transfer. *See, e.g.*, *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986) (citing cases from the Second, Third, and Seventh Circuits). This reasoning does not apply if two cases are not so closely related that simultaneous litigation in different districts would not in fact waste time, energy, or money. As described above, this action was related to the *Baja* action after Shanze filed a notice of related cases in November 2014. As viewed from a perspective internal to this district, relation would have conserved some resources, although the cases were not consolidated. But viewed from an

11

inter-circuit perspective, the opposite is true; transfer is now the more efficient and convenient choice because the efficiencies that may result by litigating both actions before the same judge in this district are outweighed by the increased efficiency and convenience that will result by transferring the matter to the Northern District of Texas.

III.  CONCLUSION

The balance of factors analyzed above tips strongly in favor of transfer. ACCO's motion is GRANTED. This case is transferred to the United States District Court for the Northern District of Texas.

IT IS SO ORDERED.

DATED: March 5, 2015.

_____
UNITED STATES DISTRICT JUDGE