IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHANZE ENTERPRISES, INC. d/b/a | § | |
| BAJA AUTO INSURANCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-0756-D |
| VS. | § | |
| | § | |
| AMERICAN CASUALTY COMPANY | § | |
| OF READING, PA, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

The instant cross-motions for summary judgment present a question to be decided under the Texas eight-corners rule: whether the defendant-insurer has a duty to defend the plaintiff-insured under a businessowners liability policy. Concluding that it does not have a duty to defend, the court grants summary judgment in the defendant-insurer's favor.

I

This is an action by plaintiff Shanze Enterprises, Inc. d/b/a Baja Auto Insurance ("Shanze")[1] against defendant American Casualty Company of Reading, PA ("ACCO") for

_____

[1]ACCO asserts in a footnote in its brief that Shanze has changed its name to "Plano Insurance Group, Inc.," that Shanze has advised the court in the Underlying Suit of the name change, but that Shanze has not yet notified this court that the entity bringing suit "is not the proper party." D. 5/15/15 Br. n.1. In response, Shanze acknowledges this change of name but contends that it is still the proper party. In reply, ACCO maintains that the proper plaintiff in this case is "Plano Insurance Group, Inc. f/k/a Shanze Enterprises, Inc. d/b/a Baja Auto Insurance." D. 6/18/15 Reply n.1. Because the court concludes that ACCO is entitled to summary judgment on the merits, it need not address this question.

a declaratory judgment establishing that ACCO has a duty to defend Shanze in a lawsuit pending in federal court in California, and for related relief.  The instant suit arises from an underlying lawsuit brought by Baja Insurance Services, Inc. ("Baja"), an insurance brokerage firm, against Shanze and other defendants.  *See Baja Ins. Servs., Inc. v. Shanze Enters., Inc.*, No. 2:14-CV-2423-KJM-AC (E.D. Cal. filed Oct. 15, 2014) (the "Underlying Suit").  In the Underlying Suit, Baja alleges in its First Amended Complaint for Trademark Infringement and Related Claims (the "Complaint") claims against Shanze for trademark infringement, under the Lanham Act, 15 U.S.C. § 1114(a), and Cal. Bus. & Prof. Code § 14245; and unfair competition and false advertising, under the Lanham Act, 15 U.S.C. § 1125, and Cal. Bus. & Prof. Code § 17500.  ACCO insured Shanze under a businessowners liability policy (the "Policy") for annual periods beginning on February 11, 2010 and ending on February 11, 2015.  As pertinent here, ACCO agreed under the Policy to defend Shanze against any suit seeking damages for a covered "personal and advertising injury," which "means injury . . . arising out of one or more [specified] offenses." D. 5/15/15 App. 9, 22.[2]  The two "offenses" at issue are "[t]he use of another's advertising idea in your 'advertisement,'" and "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'"  *Id.* at 22.  The Policy excludes coverage for "personal and advertising injury" "[a]rising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights."  *Id.* at 16.  But "this exclusion does not apply to infringement, in [the insured's]

---

[2]The court for clarity will refer to the parties' appendixes and briefs by the date filed.

'advertisement,' of copyright, trade dress or slogan." *Id.* D. 5/15/15 App. 38.

When Shanze requested that ACCO provide a defense in the Underlying Suit, ACCO declined coverage on several grounds. After Shanze unsuccessfully sought reconsideration of ACCO's decision, Shanze filed the instant suit against ACCO in the Eastern District of California, which then transferred the case to this court under 28 U.S.C. § 1404(a). *See Shanze Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 2015 WL 1014167, at *7 (E.D. Cal. Mar. 5, 2015).

ACCO now moves the court to enter summary judgment declaring that ACCO has no duty to defend Shanze in the Underlying Suit, dismissing all of Shanze's claims, and granting other relief. ACCO maintains that "personal and advertising injury" coverage only applies to specific offenses, and does not include coverage for trademark; and that Shanze is mistakenly contending that the trademark infringement claims made in the Underlying Suit can be characterized as claims for the use of another's advertising idea and/or infringing upon another's slogan. Shanze moves for partial summary judgment declaring that ACCO has a duty to defend Shanze in the Underlying Suit, and that Shanze is entitled to recover its reasonable expenses of defending the Underlying Suit, and prejudgment interest, in amounts to be determined. Because the parties' motions present the same issues, the court will consider them together.

II

In Texas, "[t]he duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the

- 3 -

policy." *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002) (citation and internal quotation marks omitted).[3]  "Texas follows the 'eight-corners' rule, under which the court looks only to the third-party plaintiff's pleadings and the provisions of the insurance policy in determining whether an insurer has a duty to defend." *Trammell Crow Residential Co. v. Va. Sur. Co.*, 643 F.Supp.2d 844, 849 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)).  "Neither facts outside the pleadings nor the truth or falsity of the allegations should be considered, and the allegations against the insured should be 'liberally construed in favor of coverage.'"  *Id.* (quoting *GuideOne Elite*, 197 S.W.3d at 308); *see also Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 597 (5th Cir. 2011) ("[W]e may not infer additional facts that are not in the pleadings.").  The court must "resolve all doubts regarding the duty to defend in favor of the duty." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (citing *King v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)).  Under the "eight-corners" rule,

> [i]f the four corners of a petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, the insurer has a duty to defend.  If all the facts alleged in the underlying petition fall outside the scope of coverage, then there is no duty to defend, but we resolve all doubts regarding duty to defend in favor of the duty.

---

[3]The court assumes *arguendo* that Texas law applies because both parties' briefs apply Texas law to interpret the Policy, and the California district court transferred this case, in part, because it concluded that Texas law governs the interpretation of the Policy.  *See Shanze Enters.*, 2015 WL 1014167, at *4.

*Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006) (footnotes omitted).  "If an insurer has a duty to defend any portion of a suit, the insurer must defend the entire suit." *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.–Tex.*, 249 F.3d 389, 395 (5th Cir. 2001).

The insured has the initial burden of showing that a claim is potentially within the scope of policy coverage, and, once the insured's burden is met, "the insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of *all* claims, also within the confines of the eight corners rule." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing Tex. Ins. Code Ann. art. 21.58(b) (Vernon Supp. 1997)) (citing Texas cases).  "If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) (citations omitted).

Each party's summary judgment burden depends on whether it is addressing a claim or defense for which it will have the burden of proof at trial.  To be entitled to summary judgment on a matter for which it will have the burden of proof, a party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  When the summary judgment movant will not have the burden of proof at trial, it need only point the court to the absence of evidence of any essential element of the opposing party's claim or defense.  *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once it does so, the nonmovant must

go beyond its pleadings and designate specific facts demonstrating that there is a genuine

issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)

(en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury

could return a verdict for the party with the burden of proof.  *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  The nonmovant's failure to produce proof as to any essential

element renders all other facts immaterial.  *Trugreen Landcare, L.L.C. v. Scott*, 512

F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory

where the nonmoving party fails to meet this burden.  *Little*, 37 F.3d at 1076.

III

Before turning to the parties' merits-based arguments, the court will address a

preliminary question concerning what summary judgment evidence is properly considered.

A

In opposition to Shanze's motion, ACCO challenges, in pertinent part, Shanze's

reliance on the contents of the Baja and Shanze websites.  Shanze responds that this evidence

should be included because, under the eight-corners rule, the court must consider exhibits

attached to the complaint.  Shanze also contends that the court must consider Baja's entire

website because, "[l]ike a hyperlink, [Baja's] attachment of the website attaches the entire

website," since "[n]o one truly expects a plaintiff to print out each and every page of the

website and attach it to the complaint." P. 6/18/15 Resp. to D. Objs. 1.  Shanze contends that

attaching the entire website to the complaint would be impractical and infeasible because

"[w]ebsites may include thousands of web pages; hundreds of daily iterations and changes; and dozens of interactive features that are not captured by a paper copy." *Id.* at 1-2.

The court will assume *arguendo* that it must consider exhibits to the Complaint, because doing so does not affect the court's decision.  But the court will not consider information found on the Baja website that is included neither in the Complaint nor in an exhibit to the Complaint.  The court has found no authority to support the proposition that, when ruling on the duty to defend, the court must consider an entire website when only part of the website is included in a printout that is attached as an exhibit to the complaint in the underlying lawsuit.  Moreover, Baja attached the printout of its website for the purpose of providing an example of its use of its trademark.  *See* P. 5/15/15 App. 3 ("Attached hereto as Exhibit 3 are copies of representative samples of materials showing [Baja's] use of the [Baja] Marks in connection with these insurance related products and services.").[4]

B

Under the rubric of its judicial notice argument, and in its brief in support of its

---

[4]Shanze also relies on Rule 201 of the Texas Rules of Evidence to contend that the court can take judicial notice of the contents of the websites.  This argument lacks force.  Setting to one side that the Texas Rules of Evidence do not control where the evidence issue does not involve a question of privilege, and recognizing that courts have taken judicial notice of the contents of websites under Fed. R. Evid. 201, Shanze is still unable to demonstrate that it is proper under the eight-corners rule to consider the contents of an entire website when only part of the contents are included as an exhibit to the complaint in the underlying lawsuit.  In other words, even if the entire contents are admissible in evidence because they are judicially noticeable, the contents not included in the exhibit to the complaint do not have substantive significance because they are not properly considered when applying the eight-corners rule.

motion for partial summary judgment, Shanze also asks the court to consider the printouts of the Baja and Shanze websites under an exception to the eight-corners rule that allows consideration of extrinsic evidence.  Shanze maintains that "Texas courts recognize a limited exception to the eight-corners rule where extrinsic evidence is referenced in the underlying complaint.  Especially, when it is relevant to an independent and discrete coverage issue, but not touching on the merits of the underlying third-party claim."  P. 6/18/15 Resp. to D. Objs. 2-3 (citing *GuideOne Elite*, 197 S.W.3d at 307).  Shanze concedes that the question whether there is an exception to the eight-corners rule is unsettled under Texas law, but it maintains that it is appropriate here because the websites are both referenced in the Complaint, and both evidence the use of "Baja Insurance" as an advertising idea and a slogan and do not have any bearing on the merits of the Underlying Suit.  The court disagrees.

"The Texas Supreme Court has never recognized any exception to the strict eight corners rule."  *Gilbane Bldg.*, 664 F.3d at 597 (quoting *Northfield*, 363 F.3d at 529, 531); *see also Zurich Am.*, 268 S.W.3d at 497.  At most, the Fifth Circuit has stated that *if* the Texas Supreme Court were to recognize an exception, it would likely do so "'when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.'" *GuideOne Elite*, 197 S.W.3d at 308-09 (emphasis in original) (footnotes omitted) (quoting *Northfield*, 363 F.3d at 531); *see also Zurich Am.*, 268 S.W.3d at 497 (quoting *GuideOne Elite*, 197 S.W.3d at 309) (refusing to decide whether the exception discussed in *GuideOne*

*Elite* exists because "it [was] not 'initially impossible to determine whether coverage [was] potentially implicated'").

Shanze has also failed to cite any case, and the court located none, that recognizes an exception where extrinsic evidence is referenced in the underlying complaint. "[T]his court is obligated in this diversity case to apply Texas law, not to extend it in circumstances where it is unable to predict that the Supreme Court of Texas would do so." *Sentry Ins. v. DFW Alliance Corp.*, 2007 WL 669418, at *2 (N.D. Tex. Mar. 6, 2007) (Fitzwater, J.). The court therefore declines to recognize such an exception to the eight-corners rule. And even if such an exception existed, it would not be warranted in this case because the court can determine from the allegations of the Complaint whether Baja alleges that its trademark is an advertising idea or a slogan. Thus "it is not 'initially impossible to determine whether coverage is potentially implicated.'" *Zurich Am.*, 268 S.W.3d at 497 (quoting *GuideOne Elite*, 197 S.W.3d at 309). And Shanze is attempting to present extrinsic evidence of its website to show that it actually infringed Baja's trademark, which clearly touches on the merits of the Underlying Suit.

Accordingly, except for considering the exhibits to Baja's Complaint in the Underlying Suit, the court otherwise declines to consider other parts of the Baja and Shanze websites.[5] *See Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011)

---

[5]ACCO has filed other objections to summary judgment evidence that Shanze offers in opposition to ACCO's motion and in support of its own motion. These objections are denied as moot because they relate to evidence that the court has not relied on in rendering its decision.

(citing *Pine Oak Builders*, 279 S.W.3d at 654) (explaining that under the eight-corners rule, "an insurer's duty to defend is determined solely by the facts alleged in the petition and the terms of the policy"); *Gilbane Bldg.*, 664 F.3d at 596-97 (citing *Nat'l Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997)) ("In performing its eight-corners review, a court may not . . . look outside the pleadings.").

IV

The court now turns to the merits of the parties' cross-motions.

A

Shanze asserts that the Complaint states a claim that falls within the Policy's coverage for "personal and advertising injury" arising out of the offense of "[i]nfringing upon another's . . . slogan in your 'advertisement'" and/or "use of another's advertising idea in your 'advertisement.'"  ACCO maintains that Baja's claims are not even potentially covered, and it relies primarily on the following two grounds to contend that it properly denied a duty to defend: first, the Complaint does not allege facts that constitute a potentially covered "personal and advertising injury;" and, second, the Complaint alleges only trademark infringements claims, which are precluded by the Policy's intellectual property exclusion. ACCO posits that the Complaint does not assert a potentially covered "personal and advertising injury" offense because it only alleges claims for trademark infringement, and trademark infringement is not listed as a covered offense under the definition of "personal and advertising injury."

Shanze contends that Baja's claim for unfair competition premised on false

- 10 -

advertising is broader than, and distinct from, the trademark infringement claim, and is covered under the "personal and advertising injury" arising out of the offense for "use of another's advertising idea." Shanze also maintains that Baja's claim for trademark infringement is covered under the "personal and advertising injury" arising out of the offense for slogan infringement.

B

The Policy provides that ACCO has "no duty to defend [Shanze] against any 'suit' seeking damages for . . . 'personal and advertising injury,' to which this insurance does not apply." D. 5/15/15 App. 53. The Policy covers "personal and advertising injury" only for enumerated "offenses." *See, e.g., Trammell Crow*, 643 F.Supp.2d at 851 (stating that "'[p]ersonal injury' damages are those arising out of an enumerated 'offense'"). The Complaint alleges one claim for trademark infringement, under federal and California law, and one claim for unfair competition and false advertising, under federal and California law. None of these is an enumerated offense.

ACCO's duty to defend is determined, however, not by the legal theories pleaded but by the factual allegations of the Complaint in the Underlying Suit. *See Mid-Continent Cas. Co. v. Acad. Dev., Inc.*, 476 Fed. Appx. 316, 319 (5th Cir. 2012) (per curiam) (quoting *Zurich Am.*, 268 S.W.3d at 495) ("In reviewing the underlying complaint, '[i]t is the factual allegations instead of the legal theories alleged which determine the existence of a duty to defend.'"); *Zurich Am.*, 268 S.W.3d at 495 (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13 (Tex. 2007)) ("[W]e have said that the label attached to the cause

- 11 -

of action . . . does not determine the duty to defend."); *Jim Walter Homes, Inc. v. Reed*, 711

S.W.2d 617, 617-18 (Tex. 1986) ("[W]e must look to the substance of the cause of action and

not necessarily the manner in which it was pleaded.").

These are the relevant factual allegations in the Complaint:

> (8) Defendant, Shanze Enterprises, Inc. uses in interstate commerce the trade name or service mark "Baja Auto Insurance" ("infringing mark") and also uses the infringing mark as a web site domain name (www.bajaautoinsurance.com) to promote services that are virtually identical to those offered by Plaintiff. For an unknown time period, Defendant has been offering for sale and selling insurance related products and services that bear confusingly similar imitations of BAJA's registered trademarks and that are directly competitive with those of BAJA. . . .

> (9) BAJA is the owner of valid and subsisting United States Trademark/Service Mark Registration No.'s 3,568,815 and 3,919,175 on the Principal Register in the United States Patent and Trademark Office for the trademark/service mark BAJA INSURANCE SERVICES, INC. (hereinafter "[BAJA] MARKS") for insurance related products and services. . . .

> (10) BAJA has used the [BAJA] MARKS in commerce throughout the California region in the United States continuously since 1998, in connection with the offering for sale, sale, marketing, advertising and promotion of insurance related products and services. . . .

> (11) As a result of its widespread, continuous and exclusive use of the [BAJA] MARKS to identify its insurance related goods and services and BAJA as their source, BAJA owns valid and subsisting federal statutory and common law rights to the [BAJA] MARKS.

> (12) BAJA's [BAJA] MARKS are distinctive to both the consuming public and BAJA's trade. BAJA has expended substantial time, money and resources marketing, advertising

- 12 -

and promoting the insurance related goods and services sold under the [BAJA] MARKS including through BAJA's radio, television, print and internet marketing and advertising. During the period from 1998 to present alone, BAJA has expended approximately Four Million ($4,000,000.00) US Dollars on the marketing, advertising and promotion of the insurance related goods and services sold under the [BAJA] MARKS.

(15) As a result of BAJA's expenditures and efforts, the [BAJA] MARKS have come to signify the high quality of the insurance related goods and services designated by the [BAJA] MARKS, and acquired incalculable distinction, reputation and goodwill belonging exclusively to BAJA.

(16) BAJA's [BAJA] MARKS and the insurance related goods and services offered thereunder have received widespread coverage in various media, including radio, television, print and internet.

(18) [] Plaintiff continued to enlarge its operations, developing a niche market in the Hispanic community with its customer base being made up of approximately 80-85% Hispanic clients. Plaintiff has always made the [BAJA] MARKS as part of targeted advertising and marketing directed predominately towards the Hispanic demographic.

(21) [] Plaintiff began receiving telephone calls, emails and written correspondence from various Texas residents who were either requesting insurance quotes, asking for customer service, making insurance claims and/or making yearly premium payments. Plaintiff also began receiving numerous letters from insurance carriers that referenced Texas policy holders. . . . Eventually, Plaintiff realized that these communications were intended for Defendant. . . .

(25) The foregoing circumstances have cause[d] actual interference with Plaintiff's efforts to expand into other Hispanic markets . . . .

(26) Plaintiff is informed and believes that Baja Auto Insurance is set to be purchased by one of Plaintiff's direct competitors,

- 13 -

Freeway Insurance. . . . The sale of Baja to Freeway would cause further confusion to the public and further actual injury to Plaintiff if Freeway were to conduct business in California under the name Baja Auto Insurance and/or continue to conduct business under the name Baja Auto Insurance in the State of Texas.

(28) Plaintiff has also acquired common law trademark rights in the [BAJA] MARKS through continuous prior use of said marks in commerce since 1998. . . .

(30) Defendant's trade name and domain name "Baja Auto Insurance" is confusingly similar to the [BAJA] MARKS in meaning and overall impression and is similar in appearance and pronunciation.   Additionally, the goods/services sold by Defendant in connection with its mark are virtually identical to those sold by Plaintiff under the [BAJA] MARKS.  As such, the use of Defendant's mark in connection with its goods/services is likely to cause confusion, or to cause mistake, or to deceive consumers in light of Plaintiff['s] trademarks.  Defendant has thus infringed Plaintiff's trademark rights under the Lanham Act, 15 U.S.C. §1114(a) and Cal. Bus. & Prof. Code § 14245.

(32) Upon information and belief, Defendant was aware of the Plaintiff's trademarks and Defendant's unauthorized use of its infringing mark was therefore willful, intentional, and/or deliberate as a matter of fact and law. . . .

(34) Defendant's use of the infringing mark on goods/services virtually identical to Plaintiff's has caused, and is likely to caus[e] confusion, deception[,] mistake among consumers in light of Plaintiff's use of the [BAJA] MARKS.

(35) Defendant has therefore engaged in trademark infringement, false advertising and unfair competition under the Lanham Act, 15 U.S.C. §1125(a), and under the common law.

(37) By engaging in the foregoing activities, Defendants have engaged in unfair competition as defined by California Bus. & Prof. Code §§17200, et seq. and Defendants' wrongful use of Plaintiff's Mark and violation of the aforementioned laws and

regulations represents unfair, deceptive, and misleading advertising in violation of California Bus. & Prof. Code §§17500, et seq.

P. 5/15/15 App. 3-8 (bracketed material and ellipses added).

C

1

ACCO maintains that the Complaint does not allege a claim that potentially falls within coverage for a "personal and advertising injury" arising out of the offense for "infringing upon another's . . . slogan in your 'advertisement'" because Baja only alleges that Shanze infringed its trademark, not its slogan. ACCO points out that the Complaint never asserts that "Baja Insurance Services, Inc.," or a component of its name (i.e., "Baja" or "Baja Insurance"), is a slogan. It contends that "Texas law does not allow Shanze to 'read facts into the pleadings,' or 'imagine factual scenarios' that would trigger coverage." D. 6/4/15 Br. 21 (quoting *Nat'l Union Fire Ins.*, 939 S.W.2d at 142).

Shanze maintains that the Complaint *does* contain factual allegations that potentially fall within the Policy's coverage for slogan infringement.[6] It asserts that a slogan is "a distinctive cry, phrase, or motto . . . catchword or catch phrase," and that some registered trademarks are slogans. P. 6/5/15 Br. 9-10. Shanze contends that inferences drawn from the Complaint support the conclusion that Baja uses the tagline "Baja Insurance" as a slogan for

---

[6]The court assumes *arguendo* that Shanze has sufficiently pleaded the other elements of this offense and that the only issue remaining is whether the Complaint alleges that Baja's trademark is a slogan.

its trademark "Baja Insurance Services, Inc." to promote lower prices and target a Hispanic market. Shanze maintains that it is unnecessary that the Complaint allege a cause of action for slogan infringement or specifically describe "Baja Insurance" as a slogan; rather, it is only necessary that the factual allegations in the Complaint potentially state a cause of action for slogan infringement.

2

Under Texas law, the Complaint in the Underlying Suit need only plead facts that potentially state a covered claim. Applying the Texas eight-corners rule, the court concludes, however, that the Complaint does not plead facts that potentially state a claim that Shanze infringed Baja's slogan. It is clear from the facts alleged that Baja does not assert that its trademark is a slogan. All of Baja's allegations are premised on Shanze's use of "the trade name or service mark 'Baja Auto Insurance' ('infringing mark')," which Baja alleges infringes on its "trademark/service mark Baja Insurance Services, Inc. (hereinafter '[Baja] Mark']')." P. 5/15/15 App. 3. The Complaint only mentions a shorthand of the Baja trademark in two instances: first, Baja refers to itself as "Baja," *see id.* at 1 ("Plaintiff, Baja Insurance Services, Inc. (hereinafter 'Baja' or 'Plaintiff')."); and, second, Baja provides its domain name www.bajains.com in Exhibit 3, which is attached to the Complaint only to show "[Baja's] use of the [Baja] Marks," *id.* at 3; *see also supra* at § III(A). There is no other mention of "Baja Insurance," "baja," or any other component of Baja's trademark. It is therefore clear that any shorthand use of Baja's trademark is only for the purpose of referring to its party name and as part of its website address, not as a slogan. Moreover, the

- 16 -

Complaint neither alleges nor suggests that the Baja trademark is associated with low prices; rather, Baja repeatedly emphasizes that its trademark is associated with high quality. *See id.* 3-4 (alleging that "Baja has earned a sterling reputation in the insurance industry and among customers"; that the "[Baja] Marks have come to signify the high quality of the insurance related goods and services"; and that the goods and services offered under the Baja Marks "are of high quality").

Additionally, the Complaint never uses the terms "slogan," "phrase," "tagline," or the like. *See id.* at 1-10. Although there may be cases in which a phrase is so obviously a slogan that the court can infer slogan infringement despite the absence of any reference to a "slogan" in the underlying complaint, it would be unreasonable to draw such an inference here with respect to the trademark and house name "Baja Insurance Services, Inc." This is so because the Complaint does not address whether this trademark is a slogan, and all the allegations of the Complaint rest on the premise that Baja's trademark has been infringed. *See supra* at § IV(B); *see also Am.'s Recommended Mailers Inc. v. Md. Cas. Co.*, 579 F.Supp.2d 791, 796-97 (E.D. Tex. 2008) (holding that the underlying complaint "only sound[ed] in trademark infringement," and rejecting plaintiff's argument that the underlying suit alleged the exact offense as here—a "personal and advertising injury," arising out of "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement'"—because the underlying complaint "[did] not address a copyright, trade dress or slogan"), *aff'd*, 339 Fed.

Appx. 467 (5th Cir. 2009).[7]  The court therefore cannot reasonably infer from the facts alleged in the Complaint that "'Baja Insurance' is a slogan used to promote or advertise the 'Baja Insurance Services' house mark."  P. 6/5/15 Br. 13; *see also Liberty Mut.*, 473 F.3d at 601(citing *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 645 (Tex. 2005)) ("Texas law requires us to consider the allegations in the complaint along with any *reasonable inferences that flow from the facts alleged.*") (emphasis added).

Shanze is essentially asking the court to imagine that every mention of the term "Baja Mark" in the Complaint is replaced with the word "slogan."  For instance, Shanze maintains that Baja is alleging that it uses its "*slogan* 'in commerce throughout the California region . . . in connection with the offering for sale, sale, marketing, advertising and promotion of insurance related products and service,'" and "that the *slogan* 'and the insurance related goods and services offered thereunder have received widespread coverage in various media, including radio, television, print and internet.'"  P. 5/15/15 Br. 22 (emphasis added) (quoting P. 5/15/15 App. 3-4).  But the Complaint actually alleges that "Baja has used the *[Baja] Marks* in commerce throughout the California region . . . ," and that "Baja's *[Baja] Marks* and the insurance related goods and services offered thereunder have received widespread

---

[7]Shanze attempts to distinguish *America's Recommended* on the basis that "AARP" was an abbreviation, not a shorthand for any brief attention-getting phrase, and that "Baja Insurance" is a brief, attention-getting phrase.  The court disagrees.  The Complaint does not mention "Baja Insurance," much less allege that "Baja Insurance" is a brief, attention-getting phrase.  Shanze also avers that *America's Recommended* did not address whether "AARP" qualified as a slogan.  This is because, as here, the underlying complaint "[did] not address a copyright, trade dress or slogan."  *Am.'s Recommended*, 579 F.Supp.2d at 797.

coverage[.]" P. 5/15/15 App. 3-4.  The court must "examine what is in the actual complaint"; it is "not permitted to read facts into the pleadings or imagine factual scenarios that might trigger coverage." *Am.'s Recommended Mailers Inc. v. Md. Cas. Co.*, 339 Fed. Appx. 467, 469 (5th Cir. 2009) (per curiam) (citing *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008)).  "A 'policy imposes no duty to defend a claim that might have been alleged but was not, or a claim that more closely tracks the true factual circumstances surrounding the third-party claimant's injuries but which, for whatever reason, has not been asserted.'" *Gilbane Bldg.*, 664 F.3d at 597 (quoting *Pine Oak Builders*, 279 S.W.3d at 655-56).

Shanze also appears to concede that there is no slogan infringement claim in the Complaint.  Shanze maintains that the Complaint alleges that Shanze infringed Baja's slogan, but it also asserts that whether Baja's trademark is a slogan does not go to the merits of the Underlying Suit.  The court therefore concludes under the eight-corners rule that Shanze has not shown that the Complaint alleges facts that, taken as true, state a potentially covered claim for slogan infringement.  *See Northfield*, 363 F.3d at 528 ("The insured has the burden of showing that a claim is potentially within the scope of policy coverage.").  Shanze is not entitled to a defense on this basis.

## D

### 1

ACCO maintains that the Complaint does not allege potential coverage for a "personal and advertising injury" arising out of "the use of another's advertising idea in your

'advertisement'" because all of Baja's claims arise out of Shanze's alleged infringement of its trademark.  Relying on *Sport Supply Group, Inc. v. Columbia Casualty Co.*, 335 F.3d 453 (5th Cir. 2003), and *America's Recommended*, 339 Fed. Appx. 467, ACCO asserts that the Fifth Circuit has held that a trademark is not an "advertising idea" within the scope of "personal and advertising injury" coverage under Texas law.

Shanze contends that the Complaint alleges facts that trigger potential coverage for "the use of another's advertising idea in your 'advertisement.'"[8]  It posits that "Baja Insurance" is an "advertising idea" because Baja uses the word "baja"— which in Spanish means "to come down"—to promote low prices and appeal to a Hispanic market.[9]  Shanze maintains that the Complaint pleads that "Baja Insurance" is an advertising idea because it alleges that Baja "'offers and sells insurance related goods and services' to the general public using the 'Baja Insurance' name because Baja Insurance has 'come to signify the high quality of insurance related goods and services.'"  P. 5/15/15 Br. 10 (quoting P. 5/15/15 App. 4).  Shanze also posits that "[t]he fact that [Baja] secured a trademark to protect 'Baja Insurance' reveals that [Baja] considers the phrase to be a valuable 'advertising idea.'"  *Id.*

---

[8]The court assumes *arguendo* that Shanze has sufficiently pleaded the other elements of this offense and the only remaining issue is whether the idea for Baja's trademark is an "advertising idea."

[9]Shanze also posits that slogans are advertising ideas, and the facts alleged in the Complaint give rise to an inference that Baja uses the advertising idea "Baja Insurance" as a slogan.  The court has already concluded, however, that Baja does not assert that its trademark "Baja Insurance Services, Inc." or any words therein, is a slogan.  *See supra* at § IV(C)(2).

2

ACCO relies on two cases that are instructive.  *Sport Supply* addressed whether a claim for the alleged infringement of the "Macgregor" trademark in an underlying suit fell under the policy's coverage for "advertising injury" arising out of the offense for "misappropriation of advertising ideas."  *Sport Supply*, 335 F.3d at 455, 459.  The court held under Texas law that "the term 'advertising' refers to a common device for soliciting business," and that "Texas law has adopted the more conventional understanding of a trademark as a *label* that serves primarily to *identify* and *distinguish* products."  *Id.* at 464 (emphasis in original).  The court explained that "Texas law does not appear to view a trademark as a marketing device," and it concluded that the Macgregor trademark was not "advertising" under Texas law.  *Id.* at 464-65.  Accordingly, the idea for the Macgregor trademark was not an "advertising idea," and the infringement of the Macgregor trademark could not be seen as the "misappropriation of an advertising idea," even under the broadest reading of the phrase to mean the "wrongful taking of an idea about the solicitation of business."  *Id.* at 465 (internal alterations, quotation marks, and citation omitted).

*America's Recommended* addressed whether a claim for the alleged infringement of the "AARP" trademark triggered coverage for "personal and advertising injury" arising out of the offense for "misappropriation of advertising ideas."  *Am.'s Recommended*, 339 Fed. Appx. at 468-69.  The court held that the "AARP" trademark was not advertising under Texas law because "[a] previous decision of this court applying Texas law to similar issues held that the definition of advertising does not include trademarks; therefore, trademark

infringement claims do not involve misappropriation of advertising ideas." *Id.* at 469 (citing *Sport Supply*, 335 F.3d at 464-65).

Shanze maintains on several grounds that the court should not follow these decisions in this case. It posits that *Sport Supply* is distinguishable because the potential coverage arose from trademark infringement claims, and the potential coverage in the present case arises from unfair competition and false advertising claims. Shanze also contends that *Sport Supply* addressed "*misappropriation* of advertising ideas," and this case involves "*use* of another's advertising idea," which is a broader offense. Shanze contends that *Sport Supply* assumed coverage under the policy, found that an exclusion applied, and considered whether an exception to the exclusion for "misappropriation of advertising ideas" provided coverage, and the issue here is whether the underlying claims fall within the Policy's coverage. Shanze also asserts that, while the trademark at issue in *Sport Supply* was "a mere trademarked surname," Baja's trademark "contain[s] graphics and words intended to evoke trust within the Hispanic community." P. 6/18/15 Br. 7.

The court declines to give force to these immaterial distinctions. The court has already held that all the claims asserted in the Complaint are premised on trademark infringement, just as in *Sport Supply*, and the Complaint contains no factual allegations concerning a graphic or words that constitute Baja's trademarked name. *See supra* at § IV(C)(2). And the court is relying on *Sport Supply* to determine whether an idea for a trademark can be an "advertising idea" under Texas law in the context of insurance coverage.

Shanze next asserts that *Sport Supply* did not hold that a trademark cannot be an

- 22 -

"advertising idea." It maintains that *Sport Supply* cited two Texas appellate decisions, both of which suggest that a trademark *can* be an advertisement. *See* P. 5/15/15 Br. 14 (citing *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 (Tex. App. 2001, pet. denied); *All Am. Builders, Inc. v. All Am. Siding of Dall., Inc.*, 991 S.W.2d 484, 488 (Tex. App. 1999, no pet.)). *Sport Supply* cited these cases, however, only for the proposition that Texas law had adopted the understanding that "the primary function of a trademark is to serve as a label—a mark that identifies and distinguishes a particular product." *Sport Supply*, 335 F.3d at 460-61. Shanze argues that *Sport Supply* itself conceded that a trademark could be an "advertising idea." P. 5/15/15 Br. 14 (citing *Sport Supply*, 335 F.3d at 464). But this interpretation of *Sport Supply* is misplaced. The court stated, in relevant part:

> as a theoretical matter, any trademark could constitute "advertising." That does not mean, however, that any trademark constitutes "advertising" under the terms of this insurance policy. We must remember that our mission, in interpreting this insurance policy, is not to consider all possible definitions of the policy terms. Instead, in a diversity case such as the present one, we must apply the law of the forum state. Thus, our task is to examine whether, under Texas law, this trademark constitutes "advertising." . . . As we have seen, Texas law does not appear to view a trademark as a marketing device.

*Sport Supply*, 335 F.3d at 464.

Shanze also argues that *Sport Supply* is no longer controlling because later Texas authorities clarify that a trademark is an advertisement. P. 5/15/15 Br. 15-16 (citing *US Risk Ins. Gr., Inc. v. U.S. Risk Mgmt., LLC*, 2013 WL 4504754, at *15 (N.D. Tex. Aug. 20, 2013)

(Lynn, J.); *Sun Water Sys., Inc. v. Vitasalus, Inc.*, 2007 WL 628099, at *3 (N.D. Tex. Feb. 28, 2007) (Means, J.); *City of Corpus Christi v. Azoulay*, 2006 WL 1172330, at *2 (Tex. App. 2006, pet. denied) (mem. op.)).  The court again disagrees.  These cases do not address the issue decided in *Sport Supply*—whether a trademark can be an "advertising idea."  *See US Risk Ins.*, 2013 WL 4504754, at *6, 15 (explaining that, when assessing the likelihood of confusion element of a trademark infringement claim, the court should consider the similarity of advertising media used because the greater the similarity, the greater the likelihood of confusion); *Sun Water Sys.*, 2007 WL 628099, at *3 (describing the facts surrounding use of a trademark before ruling on motion for preliminary injunction); *City of Corpus Christi*, 2006 WL 1172330, at *2 (stating that city zoning ordinance defined the term "sign" to include every "trademark . . . used or intended to be used to attract attention, convey information, identify or advertise any establishment, product, goods or service").

Finally, Shanze maintains that *America's Recommended* is not controlling because it addressed whether the underlying complaint stated a covered claim for trade dress infringement, which is not at issue here.  Shanze contends that, like *Sport Supply*, the policy offense at issue in *America's Recommended* was "*misappropriation* of advertising ideas," not the broader offense for "*use* of another's advertising ideas."  P. 5/15/15 Br. 17.  Shanze posits that *America's Recommended* did not address the issue presented here—whether a defense is owed for claims of unfair competition in the event the trademark infringement claims fail.

None of these arguments is persuasive.  The court has already determined that all the

claims in the Complaint arise out of trademark infringement, *see supra* at § IV(C)(2), and the court is not permitted to imagine a factual scenario in which all of Baja's alleged claims fail, *see Am.'s Recommended*, 339 Fed. Appx. at 469 (citing *Gore Design Completions*, 538 F.3d at 369) (explaining that court must "examine what is in the actual complaint," and is "not permitted to read facts into the pleadings or imagine factual scenarios that might trigger coverage"). The court looks to *America's Recommended* only to determine whether an idea for a trademark can be an "advertising idea" under Texas law in the context of an insurer's duty to defend.

The question presented in this case has already been answered by the Fifth Circuit. "[T]he definition of advertising does not include trademarks." *Am.'s Recommended*, 339 Fed. Appx. at 469 (citing *Sport Supply*, 335 F.3d at 464-65). Thus Baja's trademark "Baja Insurance Services, Inc." is not advertising, and the idea for Baja's trademark is not an "advertising idea." Also, the court cannot reasonably infer from the facts asserted in the Complaint that Baja alleges that a component of its trademark ("baja" or "Baja Insurance") is an "advertising idea." As discussed *supra* at § IV(C)(2), all of Baja's allegations are premised on Shanze's use of "the trade name or service mark 'Baja Auto Insurance' ('infringing mark')," which infringes on its "trademark/service mark Baja Insurance Services, Inc. (hereinafter '[Baja] Mark']')." P. 5/15/15 App. 3. And other than Baja's party name ("Baja") and its website address (www.bajains.com), mentioned only in Exhibit 3, the Complaint never refers to "Baja Insurance," "baja," or any other component of Baja's trademarked name, and it never alleges that the Baja trademark is associated with low prices.

- 25 -

*See id.* at 3-10.

Accordingly, the court concludes under the eight-corners rule that Shanze has not shown that the Complaint alleges facts that, taken as true, state a potentially covered claim for the "use of another's advertising idea." *See Northfield*, 363 F.3d at 528. Shanze is not entitled to a defense on this basis.

E

ACCO is also entitled to summary judgment because it has established beyond peradventure that each claim alleged in the Complaint falls within the Policy's exclusion for "'personal and advertising injury' . . . [a]rising out of the infringement of . . . trademark . . . or other intellectual property rights." D. App. 55, 59-60; *see also Northfield*, 363 F.3d at 528 ("[T]he insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims.").

Shanze argues that this exclusion does not preclude all of Baja's claims. It contends that a claim for unfair competition in the form of a Lanham Act § 1125 false advertising claim includes allegations beyond violation of trademark or intellectual property rights. Shanze also maintains that the Complaint alleges an unfair competition and false advertising claim that are separate from the trademark infringement claim, because the Complaint uses the word "and" to separate these claims, pleads them in separate counts, and asserts distinct liability for them. Finally, Shanze contends that, even if all mention of Baja's trademark were disregarded, the Complaint would still state a cause of action for unfair competition and

false advertising.[10]  The court disagrees.

As previously explained, the factual allegations, not the legal theories pleaded, in the Complaint control whether the Policy imposes a duty to defend.  *See Mid-Continent Cas. Co.*, 476 Fed. Appx. at 319 (quoting *Zurich Am.*, 268 S.W.3d at 495) ("In reviewing the underlying complaint, '[i]t is the factual allegations instead of the legal theories alleged which determine the existence of a duty to defend.'"); *see also supra* at § IV(B).  "Under Texas law, when an exclusion prevents coverage for injuries 'arising out of' particular conduct, '[a] claim need only bear an *incidental relationship* to the described conduct for the exclusion to apply.'"  *Sport Supply*, 335 F.3d at 458 (alteration and emphasis in original) (quoting *Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999)).  The court has already concluded that all the claims in the Complaint, including the claim for unfair competition and false advertising, bear an incidental relationship to Shanze's alleged trademark infringement.  *See supra* at § IV(C)(2).  Shanze's attempt to separate these claims therefore fails.

---

[10]For instance, Shanze maintains that the following claim is not barred by the intellectual property exclusion because it alleges conduct in addition to Shanze's use of the Baja trademark: "[Shanze] has been offering for sale and selling insurance related products and services . . . that are directly competitive with those of [Baja]."  P. 5/15/15 Br. 28 (quoting P. 5/15/15 App. 3).  But the Complaint alleges that "[Shanze] has been offering for sale and selling insurance related products and services *that bear confusingly similar imitations of the Baja's registered trademarks and* that are directly competitive with those of Baja."  P. 5/15/15 App. 3 (emphasis added).  Shanze cannot rewrite the Complaint to avoid the intellectual property exclusion.  *See Am.'s Recommended*, 339 Fed. Appx. at 469 (citing *Gore Design Completions*, 538 F.3d at 369) (explaining that court must "examine what is in the actual complaint," and is "not permitted to read facts into the pleadings or imagine factual scenarios that might trigger coverage"); *see also supra* at § IV(D)(2).

Because all of Baja's claims bear an incidental relationship to, and cannot be separated from, its trademark infringement claim, the court holds that the intellectual property exclusion precludes a duty to defend all the claims alleged in the Complaint.[11]  And because the court has already determined that the Complaint does not allege a possible claim for slogan infringement, coverage is not triggered by the exception to the exclusion for "infringement, in your 'advertisement,' of copyright, trade dress or slogan." D. 5/15/15 App. 38.

---

[11]Because the court concludes that the intellectual property exclusion applies, it need not address whether the "unauthorized use of another's name" exception also applies.  *See* D. 5/15/15 App. 37-38 (excluding coverage for a "'personal or advertising injury' . . . [a]rising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers").

* * *

For the reasons explained, the court grants ACCO's motion for summary judgment and denies Shanze's motion for partial summary judgment.[12]   The court today enters judgment in favor of ACCO dismissing this action with prejudice.[13]

**SO ORDERED**.

December 15, 2015.


SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

_____

[12]On October 30, 2015 Shanze filed a notice of supplement authority in support of its motion for partial summary judgment.  ACCO objected to this filing on the ground that it violates N.D. Tex. Civ. R. 56.7, which provides that "[e]xcept for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence."  Although ACCO is correct that Shanze's filing violates Rule 56.7, the court will not strike the notice because the supplemental authority on which Shanze relies (an opinion of a district court in another circuit) does not establish that Shanze is entitled to relief.

[13]In its summary judgment motion, ACCO requests, in addition to dismissing Shanze's action with prejudice, "such other relief to which [it] may be entitled, including, where permitted, attorney's fees and costs."  D. 5/15/15 Mot. for Summ. J. 1.  Although no basis for awarding attorney's fees and non-taxable costs is apparent, if ACCO determines that there are grounds to seek monetary relief other than taxable costs of court, it may file a timely motion under Fed. R. Civ. P. 54(d)(2).